## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Karl Edward Kintner-Meyer,** | : |
| | : |
| **Plaintiff,** | : **Civil Action No.** |
| | : |
| **v.** | : |
| | : |
| **Trans Union, LLC, Experian** | : |
| **Information Solutions, Inc., Equifax** | : |
| **Information Services, LLC, and** | : |
| **Columbia Debt Recovery, LLC d/b/a** | : |
| **Genesis Credit Management or Genesis,** | : |
| | : |
| **Defendants.** | : |
| | : |

## COMPLAINT AND JURY DEMAND

### Preliminary Statement

1.     This is an action for damages brought by an individual consumer against the Defendants (named below) for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (the "FCRA"), and the Fair Debt Collections Practices Act, 15 USC §§ 1692 *et seq.* (the "FDCPA").

### Jurisdiction and Venue

2.     Jurisdiction of this Court arises under 15 U.S.C. § 1681p, and 28 U.S.C. §1331, 1337.

3.     Venue lies properly in this district pursuant to 28 U.S.C. §1391(b).

### Parties

4.     Plaintiff Karl Edward Kintner-Meyer is an adult individual who resides in Bala Cynwyd, PA.

5.     Plaintiff is a "consumer" as defined in 15 U.S.C. § 1681a(c) of the FCRA and 15 U.S.C. § 1692a(6) of the FDCPA.

6.     Defendant Trans Union, LLC ("TU") is a business entity that is registered to do business in the Commonwealth of Pennsylvania and regularly conducts business in the Eastern District of Pennsylvania, with a principal place of business located at 1510 Chester Pike, Crum Lynne, PA 19022.

7.     Defendant Experian Information Solutions, Inc ("EX") is a business entity that is registered to do business in the Commonwealth of Pennsylvania and regularly conducts business in the Eastern District of Pennsylvania, with principal place of business located at 701 Experian Pkwy, Allen, TX 75013.

8.     Defendant Equifax Information Services, LLC ("EQ") is a business entity that is registered to do business in the Commonwealth of Pennsylvania and regularly conducts business in the Eastern District of Pennsylvania, with a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, GA 30309. At times TU, EX and EQ are collectively referred to as the "Credit Reporting Agency Defendants" or the "CRA Defendants".

9.     EX, TU and EQ are each a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). EX, TU and EQ regularly engage in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports (as defined in 15 U.S.C. § 1681a(d)) to third parties.

10.     Defendant Columbia Debt Recovery, LLC d/b/a Genesis Credit Management or Genesis, ("CDR") is a business entity that is registered to do business in the Commonwealth of Pennsylvania and regularly conducts business in the Eastern District of Pennsylvania, with principal place of business located at 906 SE Everett Mall Way, Ste 301, Everett, WA 98208-3744.

11.     CDR is a "furnisher" as defined in 12 CFR 1022.41 as it regularly furnishes information relating to consumers to one or more CRAs for inclusion in a consumer report.

12.    CDR is also a "debt collector" as defined by 15 U.S.C. 1692b(6) of the FDCPA as its principle purpose is to collect debts, and it uses interstate commerce to collect upon any alleged debt.

**Facts**

**Purpose of the FCRA**

13.    Understanding the dire consequences of inaccurate credit reporting, Congress enacted the FCRA.  One of the primary purposes of the FCRA is to require CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

14.    The preservation of one's good name and reputation is also a foundational principle of the FCRA:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

Bryant v. TRW, Inc., 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)].

15.     Thus, in order to further its objectives, embedded within the FCRA is the requirement that CRAs conduct a reasonable investigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted.

16.     The FCRA also requires furnishers of information - a creditor or other third party that provides information about consumer to a CRA - upon notice, to conduct a reasonable investigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

17.     Here, despite Mr. Kintner-Meyer's numerous disputes, none of the Defendants corrected the inaccurate reporting of Plaintiff's credit information.

**The Inaccurate Debt Collection Account for an "Amenities Fee"**

18.     On October 27, 2022, Plaintiff submitted an application for an apartment at The Cynwyd. Mr. Kintner-Meyer was searching for housing because he had recently obtained employment in the area as a Software Engineer for an aerospace company.

19.     The application required Mr. Kintner-Meyer to pay $75 fee as an "Online Application Fee" and $150 as an "Online Administrative Fee". Mr. Kintner-Meyer paid both those amounts in full.

20.     After Plaintiff toured the apartment complex, on November 4, 2022, that same day,

Plaintiff determined that the apartments he was shown did not meet his needs, especially because there was mold in the bathroom and no dishwasher installed.

21.    Mr. Kintner-Meyer never moved into The Cynwyd

22.    Mr. Kintner-Meyer also never signed a lease.

23.    Later, Mr. Kitner-Meyer received a bill for $225. The bill was for an "Amenity Fee" stating that it was his balance at "Move Out". There should be no "amenity fee" or balance at "move out" since Plaintiff never moved in *and never signed a lease for The Cynwyd*.

24.    Mr. Kintner-Meyer clearly could not owe an amenity fee for simply submitting a lease application and visiting an apartment to potentially lease. Over a year later, The Cynwyd referred the debt to CDR for collections, which was then credit reported to the CRA Defendants in or about April 2024.

### Three Disputes with TU by Mr. Kintner-Meyer

25.    In or about April 2024, Mr. Kintner-Meyer disputed the CDR debt collection account with TU. The CDR debt collection account was based on the inaccurate debt that Mr. Kintner-Meyer reportedly owed to The Cynwyd relating to an amenity fee. Mr. Kintner-Meyer's dispute explained that he did not owe the debt, only toured The Cynwyd, and never leased an apartment with The Cynwyd, and therefore, could not owe an amenity fee.

26.    TU responded by stating the CDR debt collection account was verified as accurate.

27.    On May 4, 2024, Mr. Kintner-Meyer again disputed the CDR debt collection account by letter dated April 23, 2024. Mr. Kintner-Meyer again explained that he did not owe the debt, only toured The Cynwyd, never leased an apartment with The Cynwyd, and therefore, could not owe an amenity fee.

28.    Mr. Kintner-Meyer also included a copy of his driver's license, passport, ledger

from CDR reflecting that the debt was for an "amenity fee", and the apartment application which makes no mention of any amenity fee.

29.     By correspondence dated May 12, 2024, TU falsely informed Mr. Kintner-Meyer that the disputed CDR collection account was not on his credit report.  However, based on Mr. Kintner-Meyer's recent review of his credit report at that time, the disputed account was still present.  Based on TU's response, no investigation of Plaintiff's dispute seems to have ever been conducted nor does it appear that the dispute was sent to CDR as required by the FCRA.

30.     On November 23, 2024, Plaintiff again disputed the CDR debt collection account by letter dated October 22, 2024.  Mr. Kintner-Meyer again explained that he only visited The Cynwyd to potentially rent an apartment, toured the apartment complex, but decided against renting an apartment, never signed a lease and did not owe an amenity fee.

31.     Mr. Kintner-Meyer also included a copy of his driver's license, passport, copy of his current lease agreement, copy of an electricity bill, copy of his internet bill, ledger from CDR reflecting that the debt was for an "amenity fee", and the apartment application which makes no mention of any amenity fee.

32.     By correspondence dated December 3, 2024, TU stated that the disputed CDR debt collection was verified as accurate and was not deleted.

33.     TU failed to conduct reasonable investigations or any investigations at all of Plaintiff's disputes in violation of Section 1681i(a) of the FCRA.

### Three Disputes with EQ by Mr. Kintner-Meyer

34.     In or about April 2024, Mr. Kintner-Meyer disputed the CDR debt collection account with EQ.  Mr. Kintner-Meyer's dispute explained that he did not owe the debt, only toured The Cynwyd, never leased an apartment with The Cynwyd, and therefore, could not owe an

"amenity fee".

35.    By correspondence dated April 11, 2024, EQ responded stating the CDR debt collection account was verified as accurate.

36.    On May 4, 2024, Mr. Kintner-Meyer again disputed the CDR debt collection account by letter dated April 23, 2024.  Mr. Kintner-Meyer again explained that he did not owe the debt, only toured The Cynwyd, never leased an apartment with The Cynwyd, and therefore, could not owe an amenity fee.

37.    Mr. Kintner-Meyer also included a copy of his driver's license, passport, billing ledger from CDR reflecting that the debt was for an "amenity fee", and the apartment application, which makes no mention of any amenity fee.

38.    By correspondence dated May 12, 2024, EQ stated that "we were unable to locate a credit file for you", and no investigation was conducted.

39.    On November 23, 2024, Plaintiff again disputed the CDR debt collection account by letter dated October 22, 2024.  Mr. Kintner-Meyer again explained that he only visited The Cynwyd to potentially rent an apartment, toured the apartment complex, but decided against renting an apartment, never signed a lease and did not owe an amenity fee.

40.    Mr. Kintner-Meyer also included a copy of his driver's license, passport, copy of his current lease agreement, copy of an electricity bill, copy of his internet bill, ledger from CDR reflecting that the debt was for an "amenity fee", a copy of a letter from EQ he received asking for additional documentation, and the apartment application which makes no mention of any amenity fee.

41.    Mr. Kintner-Meyer then received two contradictory letters from EQ dated December 2, 2024.

42.     One letter from EQ stated that "[w]e have received your request concerning inaccurate information", but "[t]he documents you provided were illegible. To ensure that your request is processed without further delay, please enlarge photocopies of any documents that contain small print…".

43.     The second letter from Equifax stated that "[w]e received your recent dispute correspondence on the following item(s) on your Equifax credit report: COLUMBIA DEBT RECOVERY LLC DBA GENESIS*1155." EQ further stated in the correspondence that "[o]ur records show that you have already disputed the item(s) above at least twice within the last 90 days. This disputed information was verified as accurate and we have not received *new relevant information* to support this dispute. Therefore, we consider this new dispute frivolous and will not research this dispute." (Emphasis added.)

44.     The assertions within this second letter by EQ contradict EQ's prior representations to Mr. Kintner-Meyer. In its May 12, 2024, letter to Plaintiff, EQ claimed that it could not locate his credit file, as such, no investigation was conducted and Mr. Kintner-Meyer never received any investigative results to his dispute dated April 23, 2024.

45.     However, EQ plainly was able to locate Mr. Kintner-Meyer's credit file as it had records reflecting that Plaintiff did previously dispute the CDR debt, which was part of its basis in finding that Mr. Kintner-Meyer's dispute dated October 22, 2024, was "frivolous".

46.     EQ failed to conduct reasonable investigations or any investigations at all of Plaintiff's disputes in violation of Section 1681i(a) of the FCRA.

### Two Disputes with EX by Mr. Kintner-Meyer

47.     On May 4, 2024, Mr. Kintner-Meyer disputed the CDR debt collection account by letter dated April 23, 2024. Mr. Kintner-Meyer explained that he did not owe the debt, only toured

The Cynwyd, never leased an apartment with The Cynwyd, and therefore, could not owe an amenity fee.

48.    Mr. Kintner-Meyer also included a copy of his driver's license, passport, billing ledger from CDR reflecting that the debt was for an "amenity fee", and the apartment application, which makes no mention of any amenity fee.

49.    By correspondence dated May 13, 2024, EX stated that "we were unable to locate credit information about you…", and no investigation was conducted. EX stated that they will need additional information.

50.    On November 23, 2024, Plaintiff again disputed with EX with the additional information and documentation that EX had asked for. EX responded by letter dated December 6, 2024, stating the exact same information as the letter from EX in response to Plaintiff's first dispute, claiming that EX was "unable to locate credit information" about him and will need additional documentation.

51.    Upon information and belief, it appears that the issues of EX and EQ with properly responding to Mr. Kintner-Meyer relate to a systemic problem with processing hyphenated names, or the existence of another individual with a name similar to that of Plaintiff.

52.    Regardless, the Defendants either did not engage in any investigation when they were informed of the inaccurate reporting, or (alternatively) did not engage in a reasonable investigation, as such an investigation would have revealed that the inaccurate information was false and misleading.

53.    Defendants also failed to institute or adhere to policies and procedures that could have prevented the reporting of the inaccurate information.

54.    Defendants knew or should have known that their actions violated the FCRA.

Additionally, Defendants could have taken the steps necessary to bring their agents' actions within compliance of the statutes but neglected to do so and failed to adequately review those actions to ensure compliance with said laws.

55.     Plaintiff's credit reports and file have been obtained from the CRA Defendants and have been reviewed by prospective and existing credit grantors and extenders of credit, and the inaccurate information has been a substantial factor in precluding Plaintiff from receiving credit offers and opportunities, known and unknown.  Plaintiff's credit reports have been obtained from EX, TU, and EQ by such third parties.  Plaintiff has also suffered increased interest rates, reduced opportunities for financing, and increased insurance premiums as a substantial result of Defendants reporting of the inaccurate information.

56.     Because of Defendants' conduct, Plaintiff has suffered actual damages in the form of credit denial or loss of credit opportunity, credit score reduction, informational harm, privacy harm, credit defamation and emotional distress, including, but not limited to, anxiety, frustration, embarrassment, and humiliation.

57.     At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

58.     At all times pertinent hereto, the conduct of the Defendants, as well as that of its agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of Plaintiff.

**Defendants' Failure to Conduct Reasonable Investigations**

59.     Mr. Kintner-Meyer's disputes from April, May and November 2024 triggered obligations under the FCRA for Defendants to conduct reasonable investigations of Plaintiff's

disputes.

60.     The dual investigative requirement required by both credit reporting agencies and data furnishers further illustrates Congress' findings of the importance of accurate consumer credit reporting.  Unfortunately, however, when conducting an 'investigation' CRAs and furnishers choose speed over accuracy.

61.     Furnishers merely review information in their limited credit reporting databases, to determine if the disputed information is accurate.  CRAs then simply accept as true whatever representation is made by the furnisher without questioning any of the results or conducting a true independent investigation.

62.     It is apparent that Mr. Kintner-Meyer does not owe the "amenity fee' as he never signed a lease and never moved into the apartment.

63.     A reasonable investigation necessitated a review of any documentation submitted with the disputes that Plaintiff submitted, which would have further demonstrated that Mr. Kintner-Meyer should not be responsible for paying the alleged debt that is being reported by the CRAs and CDR.

64.     Defendants either did not engage in any investigation when they were informed of the inaccurate reporting, or (alternatively) did not engage in a reasonable investigation, as such an investigation would have revealed that the inaccurate information was false and misleading.

65.     Defendants failed to institute or adhere to policies and procedures that could have prevented the reporting of the inaccurate information.

66.     Defendants knew or should have known that their actions violated the FCRA. Additionally, Defendants could have taken the steps necessary to bring their agents' actions within compliance of the statutes but neglected to do so and failed to adequately review those actions to

ensure compliance with said laws.

67.     Plaintiff's credit reports and file have been obtained from the CRA Defendants and have been reviewed by prospective and existing credit grantors and extenders of credit, and the inaccurate information has been a substantial factor in precluding Plaintiff from receiving credit offers and opportunities, known and unknown.

## Count One – Violations of the FCRA
### Plaintiff v. EX, TU, and EQ

68.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

69.     At all times pertinent hereto, EX, TU and EQ are each a "person" and a "consumer reporting agency" as those terms are defined by 15 U.S.C. § 1681a(b) and (f).

70.     At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

71.     At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

72.     The Defendants have violated numerous provisions of the FCRA for their improper actions, including but not limited to Sections 1681e(b) and 1681i(a) of the FCRA.  Defendants willfully and negligently violated the FCRA and are liable for damages to Plaintiff pursuant to Section 1681n and 1681o of the FCRA.

73.     The conduct of Defendants was a direct and proximate cause, as well as a substantial factor, in bringing about the actual damages and harm to Plaintiff that are outlined more fully above and, as a result, Defendants are liable to Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

## Count Two – Violations of the FCRA
### Plaintiff v. CDR

74.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

75.     At all times pertinent hereto, CDR was a "person" as that term is defined by 15 U.S.C. § 1681a(b).

76.     At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

77.     CDR violated Section 1681s-2(b) of the FCRA by engaging in the following conduct:

   a.   willfully and negligently failing to conduct a reasonable investigation of the inaccurate information that Plaintiff disputed;

   b.   willfully and negligently failing to review all relevant information concerning Plaintiff's inaccurately reported trade line;

   c.   willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

   d.   willfully and negligently failing to report the accurate status of the inaccurate information to all credit reporting agencies;

   e.   willfully and negligently failing to provide all credit reporting agencies with the factual information and evidence that Plaintiff provided to CDR;

   f.   willfully and negligently continuing to furnish and disseminate inaccurate, unlawful and derogatory credit account and other information concerning Plaintiff to credit reporting agencies and other entities; and

g.  willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. §1681s-2(b).

78.     Pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o, CDR is liable to Plaintiff for willfully and negligently failing to comply with the requirements imposed on a furnisher of information for violating Section 1681s-2(b).

79.     The conduct of CDR was a direct and proximate cause, as well as a substantial factor in bringing about the serious injuries, actual damages and harm to Plaintiff that are outlined more fully above. As a result, Defendant is liable to Plaintiff for the full amount of statutory, actual, and punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

### Count Three – Violations of the FDCPA
### Plaintiff v. CDR

80.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

81.     CDR is a "debt collector" as defined by 15 U.S.C. § 1692a(6) of the FDCPA.

82.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(6) of the FDCPA.

83.     The above reporting of inaccurate information to credit reporting agencies by CDR was "communications" relating to "debts" as defined by 15 U.S.C. §§ 1692a(2) and 1692a(5) of the FDCPA.

84.     Any alleged debts at issue arose out of a transaction which was primarily for personal, family or household purposes.

85.     CDR violated the FDCPA. CDR's violations include, but are not limited to, violations of:

a.  The false representation of the amount, character or legal status of a debt;

b.  Communicating or threatening to communicate to any person credit information which is known or which should be knowns to be false; and

c.  Otherwise using false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect a debt from the Plaintiff.

86.    CDR's acts, as described, above were done with intentional willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of coercing Plaintiff to pay monies relating to the inaccurate/stale information.

87.    As a result of the above violations of the FDCPA, CDR is liable to Plaintiff in the sum of Plaintiff's statutory damages, actual damages and attorneys' fees and costs.

## JURY TRIAL DEMAND

88.    Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment in Plaintiff's favor and damages against the Defendants, based on the following requested relief:

a.    Actual damages;

b.    Statutory damages;

c.    Punitive damages;

d.    Costs and reasonable attorneys' fees; and

e.    Such other relief as may be necessary, just and proper.

**THE KIM LAW FIRM, LLC**

BY:     */s/ Richard H. Kim*
         Richard Kim, Esquire
         1515 Market St., Suite 1200
         Philadelphia, PA 19102
         Ph. 855-996-6342/Fax 855-235-5855
         rkim@thekimlawfirmllc.com

         *Attorney for Plaintiff Karl Edward Kintner-Meyer*

Date: July 14, 2025